**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAI SAETEURN,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 1:11-cv-02134-LJO-SMS<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THE COURT AFFIRM DENIAL OF BENEFITS AND ORDER JUDGMENT FOR COMMISSIONER |

Plaintiff Lai Saeteurn, by his attorney Sengthiene Bosavanh, seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits under Titles II and XVI of the Social Security Act. The matter is before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following a review of the complete record and applicable law, the undersigned finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards, and recommends that the Court affirm the Commissioner's denial of benefits.

**I.   Procedural History**

Plaintiff claims he has been disabled since October 22, 2004. His previous application for benefits was denied by an ALJ on July 31, 2007. Under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), this finding of nondisability was res judicata through that date. Plaintiff applied again on November 20, 2007. The agency denied benefits. On January 15, 2009, Plaintiff appeared and

1

testified before ALJ Sharon L. Madsen with the assistance of a Mien interpreter. On December 3, 2010, the ALJ denied Plaintiff's application. The Appeals Council denied review. Plaintiff appealed.

## II.     Factual Record

### A.     Plaintiff's Testimony

Plaintiff was born in 1967 and was age 41 at the hearing. He said he was disabled because of gout affecting his knees and ankles, pain, and depression. AR 149, 318-21. His physical condition had worsened over the years and his physical activities were limited, especially since a fall in late 2009. AR 318-24. He said he needed crutches to walk since 2006. His son helped him with personal needs like showering and dressing. He did no chores at home. He spent a typical day in bed.

In September 2008, Plaintiff told comprehensive orthopedic examiner Dr. Fieser that his pain level was currently 9/10, and with loss of activity activity increased to 10/10. He said he was independent with all activities of daily life, with the exception of donning and doffing his socks and shoes, although the doctor observed him don and doff his socks and shoes, and get on and off the examination table independently. He could not do laundry, dishes, vacuuming, light dusting, or significant lifting. He could sit for five minutes, and with crutches could stand for five minutes and walk a half block. He spent most of his day "doing nothing" and lying down due to pain. AR 234.

### B.     Medical Record

The sparse medical records reflect that Plaintiff had a history of pain in his right knee and left ankle, gout that is stable with treatment, and non-compliance with treatment, all of which predate the prior, July 2007 ALJ decision. Beginning in June 2008, he started taking 50mg Zoloft prescribed by his primary care doctor.

From March 2007 to June 2008, medical staff at Mercy Medical Center, including treating physician Leng Thao, M.D., found that after running out of medications for several weeks, Plaintiff had acute gout exacerbation and pain. He reported having similar pain intermittently for the past several years. Initially, his pain had been improving and he had no problem with ambulation until he developed foot pain making ambulation more difficult. He needed medication refills and reminders about dietary precautions to stabilize his gout. AR 192-93, 229-32.

In February 2008, non-examining state agency physician George W. Bugg, M.D., reviewed the medical evidence through September 2007 and opined that there had been no change in Plaintiff's condition since the prior ALJ denial. Plaintiff had only some occasional postural limitations. AR 216-25. In March 2008, non-examining state agency psychiatrist Harvey Biala, M.D., found Plaintiff's depression to be nonsevere. AR 226-27.

In August 2008, Plaintiff had another gout attack and ambulated with a cane. His symptoms improved by March 2009 and he had normal ranges of motion in the lower extremities despite mild pain. AR 273, 278.

In September 2008, Carl Fieser, M.D., conducted a comprehensive orthopedic examination, but was unable to review any records. AR 233-37. Plaintiff had limited ranges of knee and ankle motion and ambulated with (apparently unprescribed) crutches. He opined that Plaintiff had significant limitations and should use crutches to walk. AR 235-37. After reviewing record evidence from June to September 2008, a state agency physician concurred with Dr. Fieser. AR 243-50.

On September 13, 2008, Deborah Digiaro, Ph.D., conducted a psychological examination. AR 239-42. Plaintiff had no prior psychiatric history and had not received mental health treatment, but had difficulty adjusting to chronic leg pain. AR 239-40. Plaintiff's ability to perform simple and repetitive tasks was mildly impaired. His ability to perform complex tasks and complete a normal workday/workweek without interruptions from his depression was moderately impaired. He had no limitations in his ability to accept instructions from supervisors, interact with coworkers and the public, perform work activities on a consistent basis without special or additional supervision, or maintain regular attendance in the workplace. Dealing with usual stress encountered in a competitive work environment would exacerbate Plaintiff's depression, but he could benefit from mental treatment and pain management. AR 242.

In November 2008, state agency psychiatrist Luyen T. Luu, M.D., found Plaintiff's mental condition to be nonsevere. AR 251. In December 2008, Plaintiff started therapy with social worker Ge Thao, MSW, ACW. AR 295. At that time, a mental assessment did not reveal any anomalies except for a depressed mood. AR 256. In November 2009, he observed that Plaintiff had impaired memory and constricted affect. AR 296.

In May 2009, Plaintiff was apparently non-compliant with his medications and had another gout exacerbation. AR 269-71. In November 2009, he fell from a roof and injured his low back, left knee, and left ankle and was diagnosed with a "strain" with acute low back pain. AR 280-81, 284-85. However, physical examination was essentially within normal limits, except for pain to palpation of his low back without any neurological deficits. AR 264, 266, 280-81, 284-85. X-rays of his upper and lower back were unremarkable with only minimal degenerative changes and no acute findings. AR 286-87. At the hearing, the ALJ asked Plaintiff why he was on a roof. Plaintiff said that he did not know. AR 322.

### C.  Testimony of Vocational Expert

Judith L. Najarian, an impartial vocational expert, stated that Plaintiff had a work history of cabinet maker (medium, 6), cabinet maker supervisor (medium, 8), and inventory clerk (medium, 4).[1] She then assumed a person of Plaintiff's age, education, and work history, and considered hypotheticals involving this person's RFC. *Cf.* 20 C.F.R. §404.1560(c)(1).

In the first hypothetical, posed by the ALJ, Plaintiff had the same limitations as were found at the previous ALJ hearing. This person was limited to only occasional stooping, crouching, crawling, climbing, and balancing. According to Ms. Najarian, this person could do Plaintiff's prior work. The second hypothetical had the same postural limitations with medium exertion (lifting 50 pounds occasionally, 25 frequently) and standing and walking only six hours in a day. This person could also do Plaintiff's prior work. Ms. Najarian also considered other hypotheticals which were not material to the ALJ's decision.

## III.  The ALJ's Decision

The ALJ found that Plaintiff had not met his burden under the Act to show that he was disabled. Pursuant to 42 U.S.C. § 1382c(a)(3)(A), to be disabled, a claimant must be unable to engage in substantial gainful activity because of a medically determinable physical or mental

---

[1] Each job title is followed by a strength rating and a Specific Vocational Preparation number in parentheses. The strength rating captures the physical demands and frequency of certain basic activities. The frequency may be "never," "occasional" (up to one-third of the workday), "frequent" (from one-third to two-thirds), or "constant" (two-thirds or more). The Specific Vocational Preparation ranks, from one to nine, the time required to learn facility in the job. *See* Dictionary of Occupational Titles (4th ed.1991) Appendix C.

impairment which has lasted or can be expected to last for a continuous period of at least twelve months. The ALJ followed the five-step sequential analysis in 20 C.F.R. §§ 404.1520 (a)-(f): [2]

| | | |
|---|---|---|
| Step one: | | Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. |
| Step two: | | Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. |
| Step three: | | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. |
| Step four: | | Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. |
| Step five: | | Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. |

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

Plaintiff had not worked since October 22, 2004. His severe impairments were gout, right ankle degenerative joint disease, left knee osteopenia, and lumbar degenerative disease. His depression was not severe. He was not disabled under a listing. His RFC corresponded to the second hypothetical considered by the vocational expert. He could do his past work, and was not disabled.

**IV.   Discussion**

   **A.   Scope of Review**

Under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), the prior ALJ's finding of nondisability on July 13, 2007 was res judicata through that date. In addition, that finding created a rebuttal presumption of nondisability beginning on that date. Plaintiff could rebut that presumption, but only by showing a "changed circumstance" affecting the issue of disability. The ALJ found that Plaintiff had shown changed circumstances because he alleged new impairments due to a fall in November 2009. As a result, the ALJ considered whether Plaintiff was disabled after July 2007.

---

[2] The relevant regulations governing disability insurance benefits ("DIB") and supplemental security income ("SSI") are virtually identical. Only the DIB regulations will be cited in this opinion. Parallel SSI regulations correspond with the last digits of the DIB citation (e.g., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. This Court must uphold the decision if the ALJ applied the proper legal standards and made findings supported by substantial evidence. *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla," *id.,* but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the Court may not substitute its judgment. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.1996).

### B. The ALJ Properly Discounted the Opinions of Examining and Reviewing Physicians That Were Inconsistent with the Longitudinal Medical Evidence

Plaintiff asserts that the ALJ give insufficient reasons to reject the medical opinions of comprehensive orthopedic examiner Dr. Fieser, of a non-examining state agency physician, and of psychological examiner Dr. Digiaro. When evaluating a medical opinion, the factors that the ALJ should consider include (1) the examining relationship; (2) the treatment relationship, including (a) the length of the treatment relationship or frequency of examination, and the (b) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict a medical opinion. 28 C.F.R. § 404.1527(d).

#### 1. Dr. Fieser and the State Agency Physicians

The ALJ gave "little weight" to the opinion of Dr. Fieser, an examining medical source whose opinion was contradicted by substantial evidence in the record, including the opinions of non-examining state agency doctors. To reject his opinion, the ALJ had to provide "specific and legitimate reasons" supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007).

The ALJ characterized the limitations set forth by Dr. Fieser as "extreme" and not supported by the medical evidence of record. He noted that there had been little, if any, change in Plaintiff's

physical condition since the date of the prior ALJ decision in November 2007. Plaintiff had sought little treatment. Plaintiff frequently experienced exacerbations of his gout when he either ran out of medications or was non-compliant with his medications, which suggested that his pain was due in part to his own neglect.

The ALJ also noted that there were minimal objective findings on physical examinations and diagnostic studies. There was an x-ray of Plaintiff's right knee from January 2006, AR 200, and one of his right ankle taken by Dr. Frieser which showed degenerative joint disease and osseous demineralization and erosion consistent with gout. Dr. Fieser did not have access to Plaintiff's medical records. When he wrote his report, he was unaware of the exacerbating role of Plaintiff's own failure to follow treatment. The ALJ also noted the inconsistencies between Plaintiff's described physical limitations and his demonstrated abilities during the examination. In particular, Plaintiff was able to don and doff his shoes independently, though he reported that he could do only this with difficulty. By identifying Plaintiff's lack of credibility and the lack of support in the record, the ALJ has provided "specific and legitimate reasons" for rejecting Dr. Fieser's opinion. Although Plaintiff dismisses the argument that Dr. Fieser's findings were not consistent with the record, Plaintiff's brief entirely omits a statement of relevant facts and ignores Plaintiff's longitudinal treating records which the ALJ relied on in rejecting Dr. Fieser's opinion. *Cf.* 20 C.F.R. § 404.1527(c) (importance of longitudinal picture and consistency with the overall record in assessing medical opinions).

A non-examining state agency physician concurred with Dr. Frieser's opinion. However, the agency physician's conclusions largely relied on Dr. Frieser's conclusions. Thus, the ALJ was justified in dismissing this opinion for the same reasons he dismissed Dr. Fieser's opinion.

### 2. **Dr. Digiaro**

Dr. Digiaro was an examining medical source. She diagnosed an adjustment disorder with depressed mood, and a GAF score of 55, indicative of moderate symptoms. Plaintiff's ability to perform simple and repetitive tasks was mildly impaired. His ability to perform complex tasks and complete a normal workday without interruptions from his depression was moderately impaired. In short, his mental impairment was "severe." *See* 20 CFR 404.1520a(d)(1). Because that opinion was

controverted by substantial record evidence, as well as by the opinion of state agency doctors (Biala and Luu) who opined that Plaintiff's mental impairment was non-severe, the ALJ could reject Dr. Digiaro's opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record. *Orn*, 495 at 632-33.

First, the ALJ suggested that Plaintiff may have either been malingering or exaggerating his symptoms. At the psychiatric examination, Plaintiff appeared disheveled and in pajamas, when just three days earlier he had appeared well-groomed for his orthopedic consultative examination. Plaintiff consistently characterized his depression as secondary to his physical pain and the fact that he could not do the things he could do before. AR 167, 239. Although he told Dr. Digiaro that this depression started two years ago, when he started having knee pain, the ALJ also noted that Plaintiff had refused mental health treatment until June 2008. AR 206, 229 (antidepressants); 166-67 (counseling). There was no record of any mental health treatment, except for limited therapy records from a social worker. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ may draw an inference from lack of medical care). Although the ALJ did not address treatment with the social worker in his opinion, the treatment revealed that Plaintiff's mental status was mostly normal except for some unrated short-term memory problems (based on Plaintiff's self-report) and constricted affect in November 2009. AR 256, 295-96. Based on his own review of the record, the ALJ determined that Plaintiff had only "mild" limitations in each of the "paragraph B" functional areas as well as "no" episodes of compensation. Thus, substantial evidence supported the ALJ's decision to credit state agency doctors who opined that Plaintiff's mental impairment was not severe.

### C. The ALJ did not Err in Finding Plaintiff not Credible

Plaintiff asserts, exceedingly briefly and with minimal support, that the ALJ gave insufficient reasons to discredit his allegations of pain and depression. To reject a claimant's symptom testimony—absent affirmative evidence of malingering, and assuming his impairments could reasonably give rise to his reported symptoms—the ALJ must make credibility findings supported by clear and convincing reasons. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The reasons must be sufficiently specific to make clear the weight the adjudicator gave to the individual's statements and the reasons for that weight. SSR 96-7p.

8

The ALJ partially credited Plaintiff's allegations, and gave valid reasons supported by the record for discrediting his allegations of disabling limitations. As the ALJ explained, Plaintiff received little treatment for his physical impairments and refused mental health treatment until June 2008. AR 18, 21; *see, e.g., Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir.1999) (subjective complaints properly discredited where claimant received inconsistent and minimal treatment). In addition, as the ALJ noted, the aggravation of Plaintiff's condition was apparently caused by his failure to comply with treatment consistent with a long history of noncompliance. AR 20-21, 32, 183-217, 229-32, 269-72. *See Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) ("unexplained, or inadequately explained, failure to ... follow a prescribed course of treatment ... can cast doubt on the sincerity of the claimant's pain testimony"). Finally, as the ALJ's summary of the evidence suggests, Plaintiff's complaints were also out of proportion with the objective evidence even after his fall in November 2009. AR 18, 20-21. *See Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005) (medical evidence is a factor that the ALJ can consider in his credibility analysis).

These were valid and specific reasons for rejecting Plaintiff's claims of disabling symptoms and limitations. Plaintiff did not meet his burden to provide the ALJ with medical and other credible evidence related to his claim and to prove disability. *See* 20 C.F.R. §§ 404.1512(c) (a claimant "must provide medical evidence showing that [she has] an impairment(s) and how severe it is during the time [she says] that [she] is disabled").

## V.  Conclusion

The ALJ applied appropriate legal standards and substantial credible evidence supported the ALJ's determination that Plaintiff was not disabled. Accordingly, the undersigned recommends that the District Court affirm the Commissioner's determination.

These Findings and Recommendations will be submitted to the Honorable Lawrence J. O'Neill, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1). On or

/ / /

before **THIRTY DAYS from the entry of this decision,** any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that, by failing to object within the specified time, he may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **April 10, 2013**                    **/s/ Sandra M. Snyder**
                                                     UNITED STATES MAGISTRATE JUDGE